**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony J. Wolkow ) | No. CV 09-0087-PHX-MHM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Scottsdale Collection Service, LLC ) | |
| Defendant. ) | |

Currently pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 42). Having considered this motion and its accompanying papers, the Court issues the following Order.

**I.     Background**

Plaintiff seeks partial summary judgment on liability for Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff claims that Defendant continued to report an account to Plaintiff's credit reports after Defendant stated that no further attempts at collection would be made and promised to remove the information from Plaintiff's credit reports. (Doc. 42). Plaintiff alleges that these reports prevented him from refinancing the first and second mortgage on his home. (Doc. 42 at 2).

   **A.     Account 152210 & Reference #100304**

Scottsdale Collection Service, LLC ("SCS") was assigned an account for collections by Next Stage Financial Group ("NSFG") in October 2005. (Doc. 43 ¶ 5; Doc. 45 ¶ 5) This

1  account was identified by the account number 152210 and showed an approximate principal
2  balance owed of $27,691. (Id.) SCS then sent a collection letter to Wolkow dated March 3,
3  2006, which he received shortly thereafter.[1] (Doc. 43 ¶ 6; Doc. 45 ¶ 6). This letter had a
4  reference number of 100304. (Doc. 43 ¶ 7; Doc. 45 ¶ 7). Plaintiff then hired a lawyer, who
5  sent a letter to SCS disputing the debt and using the reference number 100304 on March 21,
6  2006. (Doc. 43 ¶ 9). However, Defendant claims that it never received this letter, and asserts
7  that the first letter it received from Plaintiff was not received until April 15, 2008, over two
8  years later. (Doc. 45 ¶ 9). Plaintiff also claims that Defendant never sent Plaintiff or his
9  attorney any documentation or other information concerning the alleged debt owed to NSFG.
10 (Doc. 43 ¶ 11). However, Defendant disputes this assertion, arguing that it has records
11 showing that it contacted Plaintiff regarding this account multiple times from October 21,
12 2005 through February 23, 2006. (Doc. 45 ¶ 11, 6, 8). Both parties agree that NSFG
13 ultimately cancelled the 152210 account on October 29, 2007 (Doc. 43 ¶ 13; Doc. 45 ¶ 13).

**B.    Account 647648**

In December 2007, NSFG assigned a second account to Defendant for collections. (Doc. 43 ¶ 14; Doc. 45 ¶ 14). This account was identified by the account number 647648. (Doc. 43 ¶ 15; Doc. 45 ¶ 15). However, the parties disagree about their interactions with this account. Plaintiff claims that he never received any letter from SCS regarding this account (Doc. 43 ¶ 16); however, Defendant claims that it sent a notice to Plaintiff regarding this account on December 7, 2007. (Doc. 43 ¶ 16).

**C.    Attempt to Refinance**

In March 2008, Plaintiff attempted to refinance his mortgages. (Doc. 43 ¶ 17). Plaintiff claims that this was the first time he learned that SCS was reporting a derogatory

---

[1] While Defendant claims to dispute the fact that a letter was sent, its statement of controverting facts states merely that "in addition to the March 3, 2006 letter, SCS has records showing that it contacted the plaintiff regarding account #152210 multiple times from October 31, 2005 through February 23, 2006. (Doc. 45 ¶ 6). The fact that additional contacts may have been made, however, in no way disputes the fact that the March 3, 2006 letter was sent.

- 2 -

account to his credit reports concerning an NSFG debt. (Id.) However, Defendant disagrees, and argues that it sent a March 3, 2006 letter and had multiple contacts with Plaintiff regarding account #152210 from October 31, 2005 through February 23, 2006. (Doc. 45 at 2).

In March 2008, Plaintiff contacted his attorney and sent a letter to SCS dated March 20, 2008. (Doc. 43 ¶¶ 17-23; Doc. 45 ¶¶ 17-23). Because SCS had moved, the letter was re-sent on April 14, 2008, and SCS admits having received the letter on April 15, 2008. (Id.)

The parties agree that after receiving Plaintiff's attorney's letter, an individual from SCS, Boyce, entered the following notes into SCS's collector notes:

> 04-15-2008 @16:28 by BB - RECEIVED LETTER FROM ATTY NORMAN ROSENBLUM 480-991-8200 ASKING FOR VERIFICATION FOR ACCT 152210 WHICH WAS CANCELLED (LETTER REFERS TO THIS BEING ON THE CRB, HOWEVER IT'S THE OTHER ACCT WHICH HAS BEEN REPORTED)

(Doc. 43 ¶ 22; Doc. 45 ¶ 22).

Plaintiff claims that SCS never notified Plaintiff or Plaintiff's attorney that there were two accounts, and that the 647648 account was the one being reported to the credit bureaus. (Doc. 43 ¶ 25). Defendant disagrees, arguing that it sent a March 3, 2006 letter and had records showing that it contacted the Plaintiff regarding account #152210 multiple times from October 31, 2005 through February 23, 2006 and regarding account #100304 before March 3, 2006. (Doc. 45 ¶¶ 25, 6, 8).

Plaintiff asserts that Defendant agreed to remove its account from Plaintiff's credit report and to cease all further collection efforts (Doc. 43 ¶ 26); however, Defendant states that it agreed ceasing collection efforts only on account #100304. (Doc. 45 ¶ 26). The letter quoted by Plaintiff to support its assertion supports Defendant's version, since only account #100304 was referenced in the letter, which made no mention of accounts 152210 or 647648. (Doc. 43 ¶ 27; Doc. 45 ¶ 27).

A copy of the Universal Data Form ("UDF") referenced in the letter was produced in discovery, and references account #152210, not account #647648. (Doc. 43 ¶¶ 29-30; Doc.

- 3 -

1  45 ¶¶ 29-30). Plaintiff claims that Defendant again sent a UDF form to the credit bureaus
2  requesting deletion of the 152210 account from Plaintiff's credit file on May 6, 2008. (Doc.
3  43 ¶ 31). However, Defendant disputes this fact and asserts that it sent a UDF form to credit
4  bureaus requesting deletion of account #155210 on May 6, 2009, and that this account should
5  have been removed "per the Metro 2 file in November 2007." (Doc. 45 ¶ 31).

6  It is undisputed that despite several letters to SCS concerning its continued reporting
7  of the NSFG account, SCS continued to report account 647648 to the credit bureaus until at
8  least January 5, 2009. (Doc. 43 ¶ 32; Doc. 45 ¶ 32). According to SCS, the 647658 account
9  was cancelled by SCS and returned to NSFG on January 30, 2009. (Doc. 43 ¶ 33; Doc. 45
10  ¶ 33).

11  Plaintiff claims that SCS's continued reporting prevented Plaintiff from refinancing
12  his home. (Doc. 43 ¶ 34). However, SCS disputes this assertion, arguing that "even a
13  disputed amount could have prevented Wolkow from refinancing his home, and it is still
14  unknown (at least to the defendant) why the Bank of England rejected Wolkow's refinancing
15  application." (Doc. 45 ¶ 34).

16  The parties agree that SCS is a "debt collector" as that term is defined by 15 U.S.C.
17  § 1692a(6). (Doc. 43 ¶ 36; Doc. 45 ¶ 36). However, they disagree about whether Plaintiff
18  is a "consumer" as defined by 15 U.S.C. § 1692a(3) and whether any debt for which Plaintiff
19  could possibly be liable was incurred for personal, family, or household purchases. (Doc.
20  43 ¶¶ 35, 37; Doc. 45 ¶¶ 35, 37). Defendant argues that whether Plaintiff is a "consumer"
21  is a conclusion of law and that Plaintiff could theoretically be liable for "those debts incurred
22  with his express permission by another party for unknown purposes." (Doc. 45 ¶ 37).

23  **II.    The Summary Judgment Standard**

24  A motion for summary judgment may be granted only if the evidence shows "that
25  there is no genuine issue as to any material fact and that the moving party is entitled to
26  judgment as a matter of law." FED. R. CIV. P. 56(c). A material issue of fact is one that
27  affects the outcome of the litigation and requires a trial to resolve the differing versions of
28  the truth. S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). To defeat the

motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.     The Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act (the "FDCPA") was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA provides a private civil remedy against those who violate the Act. 15 U.S.C. § 1692k. It is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." In interpreting the act, the standard to determine whether something is deceptive or misleading is whether the "least sophisticated consumer" could have been deceived or misled. Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988).

For the FDCPA to apply, three requirements must be met: (1) the plaintiff must be the consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the "debt" is the "debt" collector as defined by statute, and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the law. Kolker v. Duke City Collection Agency, 750 F. Supp. 468, 469 (D.N.M. 1990). Here, the parties agree that SCS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). (Doc. 43 ¶ 36; Doc. 45 ¶ 36). However, they disagree about whether Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3). (Doc. 45 ¶ 37). A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services

1 whcih are the subject of the transaction are primarily for personal, family, or household
2 purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §
3 1692a(5). Given that Wolkow appears to be a natural person, the dispute appears to be over
4 the nature of the debt. The parties disagree about whether the debt was incurred for personal,
5 family, or household purchases. (Doc. 43 ¶¶ 35, 37; Doc. 45 ¶¶ 35, 37). Defendant argues
6 that Plaintiff could theoretically be liable for "those debts incurred with his express
7 permission by another party for unknown purposes." (Doc. 45 ¶ 37). However, Plaintiff's
8 affidavit stated that "any credit account for which I could possibly be liable would have been
9 incurred for personal, family, and household purposes." (Doc. 43, Exh. 1, ¶ 19). Because
10 Plaintiff presented evidence supporting that the debt was a consumer debt, the burden shifts
11 to the Defendant to "'do more than simply show that there is some metaphysical doubt as to
12 the material facts' by 'com[ing] forward with 'specific facts showing that there is a genuine
13 issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87
14 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmovant's bare assertions, standing alone, are
15 insufficient to create a material issue of fact and defeat a motion for summary judgment.
16 Anderson, 477 U.S. at 247-48. Given that Defendant has presented no evidence to dispute
17 that the debt was a consumer debt, but has engaged in mere speculation, it will be assumed
18 for the purposes of this motion that Plaintiff's debt was a consumer debt.

19 Having determined that the FDCPA applies, the Court will consider whether Plaintiff
20 is entitled to partial summary judgment regarding Defendant's liability for its violation.
21 Plaintiff alleges that Defendant violated he following four specific sections of the FDCPA:
22 (1) contacting a consumer represented by an attorney (§ 1692c(a)(2)), (2) continuing
23 communication to consumer after notice of refusal to pay (§ 1692c(c)), (3) continuing
24 collection after notice of dispute and prior to providing verification (§ 1692g(b)), and (4)
25 using false representations or deceptive means to collect or attempt to collect a debt (§
26 1692e(10)). (Doc. 42 at 8). However, Plaintiff appears to be seeking partial summary
27 judgment only for violations of 15 U.S.C. § 1692e, since this is the only subsection for which
28 he provided any analysis in the Motion for Partial Summary Judgment. (Doc. 42).

1 Plaintiff argues that when SCS received Plaintiff's attorney's letters dated April 24, 2008 and March 20, 2008, SCS knew that Plaintiff disputed any debt that it was attempting to collect. (Doc. 42 at 8). Plaintiff argues that SCS's decision to keep reporting the account to the credit bureaus after knowing that the debt was disputed violated § 1692e because it involved a "false, deceptive, or misleading representation or means in connection with the collection of any debt," falsely represented "the character, amount, or legal status of any debt," in violation of § 1692e(2)(A), and used "any false representation or deceptive means to collect or attempt to collect any debt " [§ 1692e(10)]. Plaintiff also notes that Section 1692e(8) prohibits the communication to any person, including the credit bureaus, of credit information which should be known to be false. (Doc. 42 at 11). Thus, it appears that the substance of Plaintiff's argument is that SCS continued to report the debt to the credit bureaus after receiving the April 24, 2008 letter from Plaintiff's attorney without noting that the debt was disputed, and that it continued to report the account to the credit bureaus after representing to Plaintiff that no further collection attempts would be made.

However, Defendant points out the many flaws in Plaintiff's arguments. First, the letter containing the alleged promise that no further collection attempts would be made referenced only the #100304 account, not the #647648 account. Plaintiff asserts that Defendant agreed to remove its account from Plaintiff's credit report and to cease all further collection efforts (Doc. 43 ¶ 26); however, Defendant states that it agreed ceasing collection efforts only on account #100304. (Doc. 45 ¶ 26). The letter quoted by Plaintiff to support its assertion supports Defendant's version, since only account #100304 was referenced in the letter, which made no mention of accounts 152210 or 647648. (Doc. 43 ¶ 27; Doc. 45 ¶ 27). However, this is a disputed issue of material fact and a question for the jury. While Plaintiff would obviously prefer to believe that the letter covered all future collection attempts for any and all accounts that Plaintiff might have, the letter refers only to "Collection Reference #100304" and does not promise anything regarding any other account number. Moreover, there appears to be a factual dispute about when Plaintiff first received notice of the outstanding accounts. Plaintiff claims that he never received any letter from SCS regarding

- 7 -

the #647648 account (Doc. 43 ¶ 16); however, Defendant claims that it sent a notice to Plaintiff regarding this account on December 7, 2007. (Doc. 44 at 2). Defendant argues that Plaintiff missed the mandatory 30-day window to contest the debt under the FDCPA; yet without a determination of whether Plaintiff actually received the notice (a matter that is disputed), it is impossible to determine at this time whether Plaintiff missed the 30-day window. However, since this is a factual dispute, the Court may not rule on this issue at summary judgment.

Defendant argues that any issues regarding the #152210 account are irrelevant because they could not have caused the harm Plaintiff alleges; both parties agree that SCS cancelled the #152210 account on October 29, 2007, but Plaintiff did not apply to refinance his home until 2008. However, since motion for summary judgment addresses only liability, not causation or damages, this argument is itself irrelevant to the Court's analysis.

Finally, the parties dispute whether the debts were in fact owed; SCS claims that they were owed, and therefore, it did not communicate any false information in reporting them to the credit reporting agency, especially since SCS alleges that it requested the credit bureaus remove information on account #647648 in May 2008. However, whether the debts were owed is irrelevant to whether they were disputed. Here, however, there does not appear to be any undisputed evidence that SCS received notice that the #647648 account was disputed and failed to report notice of the dispute to the credit reporting agency. Given the large number of disputed issues of material fact (See Doc. 45 ¶¶ 1, 3, 6, 8, 9-12, 16-17, 24-27, 31, 34, 35, 17; Doc. 43 ¶¶ 1, 3, 6, 8, 9-12, 16-17, 24-27, 31, 34, 35, 17), and the fact that discovery has not yet closed, Plaintiff's motion for partial summary judgment will be denied.

/ / /

**Accordingly**,

**IT IS HEREBY ORDERED** denying Plaintiff's motion for partial summary judgment.

DATED this 22nd day of September, 2010.

Mary H. Murguia
United States District Judge